IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL A. WILSON, *et al*. | : | CASE NO. 2:20-CV-04721 |
| | : | |
| Plaintiffs, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | MAGISTRATE JUDGE ELIZABETH |
| RILEY CONTRACTING, INC. | : | PRESTON DEAVERS |
| | : | |
| Defendant. | : | |

**PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND MOTION TO STRIKE AFFIRMATIVE DEFENSES**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs Carol A. Wilson, Administrator of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Apprenticeship and Training Fund, and the Ohio Operating Engineers Education and Safety Fund (collectively, "the Funds"), and the Trustees of the Funds respectfully move this Court for an order dismissing Defendant Riley Contracting, Inc.'s ("Riley") counterclaims. Plaintiffs further move to strike several of Riley's affirmative defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. A memorandum in support is attached.

Respectfully submitted,

/s/Daniel J. Clark
Daniel J. Clark (0075125), Trial Attorney
Brian W. Dressel (0097163)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Post Office Box 1008
Columbus, Ohio 43216-1008
(614) 464-6436

Attorneys for Plaintiffs, Carol A. Wilson, et al.

1

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CAROL A. WILSON, *et al*. | : | CASE NO. 2:20-CV-04721 |
| | : | |
| Plaintiffs, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | MAGISTRATE JUDGE ELIZABETH |
| RILEY CONTRACTING, INC., | : | PRESTON DEAVERS |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO DISMISS
AND MOTION TO STRIKE**

**I.  INTRODUCTION**

The Employment Retirement Income Security Act of 1974 ("ERISA") created a comprehensive and exclusive framework governing employee benefit plans like the plans at issue in this case. As part of that framework, Congress established causes of action to allow various parties to assert their ERISA rights in federal court. The framework does not, however, open the doors of federal courts to any party that seeks to address its grievances related to the employee benefit plans under ERISA's domain. Specific to this case, ERISA allows fiduciaries to sue employers who under-contribute to employee benefit plans, but it does not permit employers to bring claims on behalf of their employees related to the allocation of contributions it makes to an employee benefit plan. See 29 U.S.C. § 1132.

Riley's counterclaims nonetheless ask the Court to adjudicate its objection to the Plaintiffs' allocation of contributions made to the Funds and to enjoin the Funds from applying Riley's contributions to amounts that Riley owes the Funds. Riley does not have standing to bring these

1

counterclaims, and this Court lacks jurisdiction to entertain them. As such, the Plaintiffs respectfully request that the Court dismiss Riley's counterclaims. Additionally, Riley's Answer asserted a number of affirmative defenses to the Plaintiffs' claims. As several of these defenses are inapplicable to the case before the court, Plaintiffs respectfully ask the court to strike those deficient defenses.

## II. RELEVANT FACTS

The facts necessary to decide this motion are few and undisputed. Riley has admitted that the Plaintiffs discovered the unpaid contributions in this case through an audit that was conducted on March 11, 2020. (Answer ¶ 8, ECF 7, Page ID 53.) In its Complaint filed on September 10, 2020, the Plaintiffs asserted claims for unpaid contributions under ERISA Section 515. (ECF 1.) The contributions at issue in the Complaint related to the period between November 1, 2015 and February 1, 2020. (Complaint ¶¶ 8, 13, 18, 23, ECF 1, PageID 3–8.)

Riley admits that it is an employer as defined by ERISA. See Answer ¶ 5, Compl. ¶ 5, 29 U.S.C. § 1003(a)(1). It further concedes that the Plaintiff trustees are duly appointed, qualified, and acting trustees of the Funds and brought this suit in their fiduciary capacity. (Answer ¶ 2, ECF 7, PageID 52; Compl. ¶ 2, ECF 1, PageID 2.) Riley also does not allege that it is asserting the counterclaims in any other capacity than as an employer. (Answer, ECF 7.)

## III. LAW AND ARGUMENT

### A. The Court Should Dismiss Riley's Counterclaims for Lack of Subject-Matter Jurisdiction and Failure to State a Claim

#### i. Standard of Review

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the standard of review "depends on whether the [movant] makes a facial or factual challenge to subject

matter jurisdiction." See Mitchell v. BMI Fed. Credit Union, 374 F. Supp. 3d 664, 667 (S.D. Ohio 2019) (citing Wayside Church v. Van Buren County, 847 F.3d 812, 816–17 (6th Cir. 2017)). Where, as here, a motion to dismiss under Rule 12(b)(1) facially attacks the sufficiency of the pleading, courts take the allegations in the challenged claim as true and determines whether those allegations establish federal claims. Gentek Bldg. Prods. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007).

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss claims that fail to state a claim upon which relief can be granted. Courts presumes that all factual allegations in the claim are true and makes reasonable inferences in favor of the non-moving party. Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield, 552 F.3d 430, 434 (6th Cir. 2008). Courts do not, however, accept as true mere legal conclusions unsupported by factual allegations. Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009). The factual allegations supporting the claim must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

### ii. The Court Lacks Jurisdiction to Consider Either of Riley's Counterclaims

Riley's counterclaims both relate to the Plaintiffs' processing of Riley's contributions to the Funds. In the first counterclaim, it seeks a declaratory judgment that the Plaintiffs do not have authority to apply Riley's ongoing contributions to the Funds against the amounts in dispute in this proceeding and that the Plaintiff Trustees have breached their fiduciary duty to Riley's current employees by doing so in the past. In the second, it seeks preliminary and permanent injunctive relief that would require the Plaintiffs to apply Riley's contributions as described and to make

3

accounting adjustments to address the contributions that have already been applied to the amounts in dispute in this case.[1] Neither allegation establishes a federal claim.

In its counterclaim for declaratory judgment against the Plaintiffs, Riley asserts that the Court has jurisdiction under the Declaratory Judgment Act, federal common law, and ERISA Section 502(a)(1) and (3). As an initial matter, the Declaratory Judgment Act does not, on its own, suffice to establish jurisdiction. Castellon-Vogel v. Int'l Paper Co., 2020 U.S. Dist. LEXIS 35279, *5 (S.D. Ohio 2020) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950)). Rather, the Act "authorizes a court to declare the rights and legal relations of interested parties for cases *over which there is an independent basis of jurisdiction*." Id. (citing NGS Am. Inc. v. Jefferson, 218 F.3d 519, 523–24 (6th Cir. 2000)) (emphasis added). Thus, the Court must have an independent basis for federal jurisdiction over Riley's counterclaim before it can grant relief under the Declaratory Judgment Act.

Riley attempts to find that independent basis for jurisdiction in two authorities: the federal common law and ERISA Section 502(a)(1) and (3). Neither can deliver Riley the jurisdictional hook that its counterclaim requires.

When Congress enacted ERISA, it established a "comprehensive regulation of employee welfare and pension benefit plans[.]" N.Y. State Conf. of Blue Cross and Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 650 (1995). The law "envisions administrative oversight, imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme." Id. at

---

[1] In addition to the jurisdictional issues at the heart of this motion, Plaintiffs note that this Court has already expressed that contribution-allocation practices to which Riley objects are permissible. See Bunn Enters. Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs, 2013 U.S. Dist. LEXIS 86211, *33–*34 (S.D. Ohio) (Marbley, J.) (finding that plaintiffs challenging the same policy at issue here were "unlikely to succeed on the merits of their argument that the Policy violates ERISA and/or the individual plaintiffs' rights under the Plan").

651.  The statutory provisions that Riley cites are part of that civil enforcement scheme.  <u>See</u> 29 U.S.C. § 1132(a)(1), (3).  Those provisions delineate the parties that are authorized to bring ERISA civil enforcement actions:

> (a) Persons empowered to bring a civil action.  A civil action may be brought—
>
>   (1) by a participant or beneficiary—
>
>     (A) for the relief provided in subsection (c) of this section, or
>
>     (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan;
>
> . . .
>
>   (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a)(1), (3).  These provisions unambiguously exclude employers like Riley from the class of parties empowered to bring civil enforcement actions.

The Sixth Circuit has confirmed this plain-text reading of the statute.  In considering ERISA Section 502, the court held that "the aforementioned authorities and the plain language of the statute make clear that Congress intended to limit the parties who could maintain actions pursuant to section 502, that section 502 is an exclusive grant of jurisdiction, and that ERISA does not expressly provide for an action by an employer . . ."  <u>Whitworth Bros. Storage Co. v. Cent. States, Se. & Sw. Areas Pension Fund</u>, 794 F.2d 221, 228 (6th Cir. 1986).  More recently, the court reiterated that, unless they are also plan fiduciaries, employers cannot bring enforcement actions under Section 502.  <u>Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.</u>, 770 F.3d 414, 418–19 (6th Cir. 2014).  In its counterclaim, Riley does not marshal any authority that supports its

ability to assert an ERISA enforcement action before this Court, let alone one strong enough to overcome both a plain reading of the relevant statute and Sixth Circuit's precedent that is directly on point and forecloses such claims.

In the absence of a statutory basis for this Court to exercise jurisdiction over its counterclaims, Riley asks the Court to allow its claims to proceed by finding a cause of action in the federal common law. Here too, the Sixth Circuit has already rejected Riley's position.

It is true that the Supreme Court has directed federal courts to "develop a federal common law of rights and obligations under ERISA-regulated plans." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989) (internal citation and quotation marks omitted). But the Sixth Circuit has held that courts can only create federal common law in the ERISA space in three limited circumstances: (1) when ERISA is "silent or ambiguous"; (2) when there is an "awkward gap" in the statutory scheme; or (3) the creation of federal common law is "essential to the promotion of fundamental ERISA policies." Girl Scouts of Middle Tenn., 770 F.3d at 420 (citing Local 6-0682 Union of Paper v. Nat'l Indus. Grp. Pension Plan, 342 F.3d 606, 609–10 (6th Cir. 2003).

The facts before the Sixth Circuit in Girl Scouts of Middle Tennessee are nearly identical to those at the heart of Riley's counterclaims. There, an employer attempted to assert breach of contract and breach of fiduciary duty claims. Id. In deciding whether to extend the federal common law to cover the employer's contractual claims, the court emphasized two guiding principles: that it must avoid rewriting legislation and that it must "develop common law pursuant to the policies underlying the legislation at issue, without altering those policies." Id. at 425. Hewing to those guideposts the court declined to expand the federal common law to encompass the employer's claim. Id. It found that doing so would amount to rewriting ERISA's enforcement mechanisms and would alter ERISA's policy by expanding its protections to an additional class of

6

parties. Id. Turning to the breach-of-fiduciary-duty claims, the court held that "ERISA's silence as to an employer's ability to hold a plan administrator liable for breach of fiduciary duties under a multiple-employer plan represents a deliberate Congressional decision to limit the parties that can pursue claims under ERISA." Id. at 426 (internal citation omitted). It further explained that "courts will not create federal common law to fill the interstices of a statute that Congress deliberately left exposed." Id. The court concluded that it had "no authority to create federal common law" that would allow employers to assert these sorts of ERISA claims. Id. at 427.

Here, Riley's entire argument boils down to the contention that Congress made a flawed policy judgment when it declined to endow employers with the ability to bring ERISA enforcement actions and that federal common law in this area is necessary to correct that policy. Answer, Counterclaim I, ¶ 27. But as the Sixth Circuit explained, courts should not create federal common law to alter a result that like this one, flows from Congress's policy judgments as reflected in the text of its enactments. The Court should decline to do so here.

Riley's second counterclaim asks the Court to enjoin the Plaintiffs from applying Riley's future contributions to the Funds to past-due amounts that Riley underpaid and to direct the Plaintiffs to reverse their accounting for past contributions made by Riley so that the accounting reflects its position on how past contributions should have been allocated. (Answer, ECF 7, PageID 63–65.) The Court should reject this counterclaim for the same reason it should reject the first: it lacks jurisdiction to consider the arguments that the counterclaim presents.

"The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co., 860 F.3d 844, 848 (6th Cir. 2017) (citing Univ. of Texas Camenisch, 451 U.S. 390, 395 (1981)). Injunctions are an "extraordinary and drastic remedy" and should not be granted lightly. Id. at 849. Courts look to

7

four factors in determining whether injunctive relief is appropriate: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." Id. Although courts balance these four factors, "[a] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." Winnett v. Caterpillar, Inc., 609 F.3d 404, 408 (6th Cir. 2010) (citing Mich. State AFL-CIO v. Miller, 103 F.3d 1240, 1249 (6th Cir. 1997).

In this case, the Court need not be concerned with preserving the status quo until it can hold a trial on the merits of the counterclaims because those counterclaims lack the legal foundation needed to proceed to trial in the first place. As discussed above, Riley has not asserted any claims that this Court has jurisdiction to consider. Without the ability to assert its claims under ERISA, Riley has no chance of succeeding on the merits, let alone a strong likelihood of doing so.

For these reasons, the Court should dismiss Riley's counterclaims for lack of subject-matter jurisdiction under Rule 12(b)(1) and failure to state a claim upon which relief can be granted under Rule 12(b)(6).

### B. Most of Riley's Affirmative Defenses Should Be Stricken

#### i. Standard of Review

Federal Rule of Civil Procedure 12(f) provides that the Court may order stricken from any pleading "any insufficient defense." Fed R. Civ. P. 12(f). An affirmative defense should be stricken unless it can "withstand a Rule 12(b)(6) challenge – in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint the matter must be stricken as legally insufficient." Williams v. Provident Inv. Counsel, Inc., 279 F. Supp. 2d 894, 906 (N.D. Ohio 2003) (internal citation omitted). This is an ERISA

Section 515 action to recover delinquent contributions and other remedies. In such a case, most of the affirmative defenses asserted by Defendant in its Answer are preempted or are otherwise unavailable. Accordingly, the Court should strike them.

### ii. Riley's Contractual and State Law Defenses Are Preempted

The Sixth Circuit has repeatedly held that contractual and other state law defenses are preempted in ERISA collections cases. Section 515 of ERISA protects and streamlines the collections procedure for ERISA plans by limiting "unrelated" and "extraneous" defenses. Kaiser Steel Corp. v. Mullins, 455 U.S. 74, 88 n.12 (1982). The Sixth Circuit has barred contractual defenses to ERISA collections actions. Orrand v. Scassa Asphalt, Inc., 794 F.3d 556, 562-563 (6th Cir. 2015); Central States, Southeast & Southwest Areas Pension Plan v. Behnke, Inc., 883 F 2d 454, 460 (6th Cir. 1989). As a result Defendant's contract defenses of failure to meet a condition precedent and accord and satisfaction are unavailable and should be stricken.[2]

Similarly, Defendant's defenses of waiver and estoppel are unavailable as a matter of law and so too should be stricken.[3] Mich. Elec. Employees' Pension Fund v. Encompass Elec. & Data Inc., 556 F. Supp. 2d 746, 751 (W.D. Mich. 2008) (holding defense of waiver not available to avoid benefit payment obligations); Williams v. Provident Inv. Counsel, Inc., 279 F. Supp. 2d 894, 907 (N.D. Ohio 2003) (granting trustee's motion to strike defenses of estoppel, waiver and ratification). Because waiver and estoppel are not permitted defenses in ERISA contributions cases, they cannot be asserted here and should be stricken.

---

[2] These defenses are asserted as defenses (B) and (D) of the Answer. (ECF 7, Page ID 57.)
[3] These defenses are asserted in Paragraph (D) of the Answer, and then duplicated in Paragraphs (E) and (G). (ECF 7, Page ID 57.)

### iii. Riley's Statute of Limitation and Laches Defenses Fail

The Court should also strike Riley's statute of limitations and laches defenses.[4] Because ERISA does not provide a statute of limitations for delinquent contribution actions, the Sixth Circuit applies the limitations period for the most analogous state cause of action. Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co., 783 F.3d 1045, 1054 (6th Cir. 2015); Cent. States Se. & Sw. Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098, 1107 (6th Cir. 1986). In Ohio, this Court applies the eight (8) year statute of limitations set forth in Ohio Revised Code § 2305.06 to actions for contributions to an ERISA plan required by a collective bargaining agreement. Wilson v. Bridge Overlay Sys., 129 F. Supp. 3d 560, 581 (S.D. Ohio 2015) (Marbley, J.).

Defendant's Answer admits that the audit in which Plaintiffs discovered the unpaid contributions was conducted on March 11, 2020. (Answer ¶ 8, ECF 7, Page ID 53.) The Complaint seeks contributions sought are due for the period of November 1, 2015 through February 1, 2020. (Complaint ¶¶ 8, 13, 18, 23, ECF 1, PageID 3–8.) The Complaint was filed on September 10, 2020. (ECF 1.) Given that timeline, this case was plainly brought within the eight-year statute of limitations. Defendant's statute of limitation defense fails.

Similarly, "laches may not be invoked to bar damages relief if the action was brought within the limitations period." Bridge Overlay Sys., 129 F. Supp. 3d at 581 (internal citation and quotation marks omitted). Thus, Defendant's statute of limitations and laches defenses necessarily fail as a matter of law and must be stricken pursuant to Rule 12(f).

---

[4] These defenses are asserted in Paragraphs (C) and (D) of the Answer, and the laches defense is duplicated in Paragraph (F). (ECF 7, PageID 57.)

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court dismiss both of Riley's counterclaims and strike the affirmative defenses asserted in Paragraphs (B), (C), (D), (E), (F), and (G) of Riley's Answer. (ECF 7, PageID 57.)

Respectfully submitted,

/s/Daniel J. Clark
Daniel J. Clark (0075125), Trial Attorney
Brian W. Dressel (0097163)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Post Office Box 1008
Columbus, Ohio 43216-1008
(614) 464-6436

Attorney for Plaintiffs,
Carol A. Wilson, et al.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2020, I electronically filed the foregoing Motion to Dismiss and Motion to Strike using the Court's CM/ECF system, which will send notification of such filing to the following ECF users:

Margaret G. Beck
BEGGS CAUDILL, LLC
4052 Holland-Sylvania Road
Toledo, Ohio 43623
(419) 885-3000

Andrew J. Martone
Matthew B. Robinson
HESSE MARTONE, P.C.
530 Maryville Centre Drive
Suite 250
St. Louis, MO 63141
314-862-3295

Attorneys for Riley Contracting Co.

                                        /s/Daniel J. Clark
                                        *Attorneys for Plaintiffs*